LOTTINGER, Judge.
This is an appeal from a judgment denying injunctive relief sought by the defendant in an executory proceeding in which the petitioners seek to foreclose, on a second mortgage on certain real property situated in the Parish of Tangipahoa. The matter has been before this Court on two prior occasions, most recently an application for writs by petitioners which resulted in the issuance of a stay order pending a hearing on the merits of defendant’s contention. 262 So.2d 551.
The facts show that on February 17, 1964, Rebo Land Corporation in liquidation, sold some 9,321.20 acres of swamp land located on the northwestern shore of Lake Pontchartrain in Tangipahoa Parish to International Development, Inc., the defendant herein. The consideration for the sale was $1,155,828.80 of which the sum of $115,582.-88 was paid in cash with the balance represented by nine proper promissory notes secured by first mortgage on the property sold. The said promissory notes were payable in ten equal, annual installments commencing one year from the date of the sale bearing interest at 5% per annum from date of sale.
Notes 1, 2, 3 and 4 in the series of notes executed at the time of the sale were acquired by petitioners with the other notes having been acquired by separate parties who are in no way connected with this suit. However, through the execution of mutual releases at the request of the defendant, the petitioner acquired a first mortgage on all of the property involved in this litigation and released their mortgage on the other property on which the other group of note holders retained their mortgage. In effect, the mortgage was divided so that the defendant could deal with each group of hold *555 ers separately. It is contended that no payments of principal were ever made on this first mortgage.
Subsequently, on May 20, 1968, the defendant issued to petitioners four promissory notes in the total amounts of $421,-044.04, these notes being secured by a second mortgage on 7,691.48 acres of land which also secured the first mortgage notes acquired by petitioners as aforesaid.
The promissory notes secured by the second mortgage matured in principal and interest on February 17, 1969, and were conditioned to bear interest at 8% from February 17, 1968 until paid. No payments were ever made on the second mortgage, either in principal or interest, and no transfers of any other valuable consideration were ever made as payment on said notes. Several extensions were given to defendant for the making of payments on these promissory notes, and finally on July 29, 1969, after defendant had continued to fail to perform its promise of payment both on the first mortgage and the second mortgage, plaintiff agreed to a final extension of time to October 23, 1969. In consideration for this extension of time, the defendant confessed judgment both on the four promissory notes received by defendant in connection with the original sale of land and also on the four promissory notes secured by the second mortgage executed on May 20, 1968. The defendant again failed to perform on its promise of payment as aforesaid and so, after almost four years of delay and continued broken promises, the petitioners finally filed this executory proceeding on October 31, 1969. This litigation is simply a foreclosure under executory proceeding on the second mortgage dated May 20, 1968, subject to the vendor’s lien and special mortgage dated February 17, 1964.
The foreclosure sale was scheduled for March 25, 1970, however, a petition for in-junctive relief was filed by defendant on March 24, 1970, claiming to have made payments of some $868,000 of the amount secured by the mortgage and as a result thereof, allegedly became entitled to the release of 4,290 acres of the mortgaged property under a release clause contained in the act of first mortgage. With little time remaining to investigate the allegations of the defendant, the Trial Judge granted a temporary restraining order and a hearing for injunctive relief was scheduled for April 9, 1970. After certain delays in said hearing date caused by the defendant, the petition for preliminary injunction was dismissed upon motion of defendant’s own counsel and at defendant’s costs. Accordingly, the sale of the property was rescheduled for July 15, 1970, however, defendant refiled a petition for injunctive relief almost identical in wording to the petition which he had previously abandoned. No hearing was scheduled on the petition because defendant permitted the temporary restraining order to expire without action and the sale was rescheduled for September 21, 1970. The sale, however, was stopped a third time when the defendant made an application for supervisory writs to this Court realleging all of the contentions that had previously been made to the District Court and was successful in obtaining a stay order of the sale scheduled for September 21, 1970. This Court rejected the defendant’s application for writs on October 15, 1970.
In the meantime, on December 14, 1970, the defendant entered a preliminary default on its petition for injunction which it had filed on July 15, 1970 and on December 18, 1970 the defendant had the default confirmed.
With no knowledge of the preliminary default and considering the petition for an injunction filed July 15, 1970, to have been abandoned by defendants, the petitioner rescheduled the judicial sale for December 23, 1970. Upon learning from another attorney who had been in court that a default judgment had been taken on December 18, 1970 against the petitioner, the petitioner’s counsel moved for a new trial on December 21, 1970, and of course, the sale scheduled for December 23, 1970 was again postponed.
*556 It is the confirmation of this default which forms the basis for petitioner’s charge that the defendant had done it a substantial injustice and “had worked a fraud upon the Court”. Petitioner claims that the default judgment was obviously based upon false testimony and deliberately misleading representations to the Court by counsel for defendant.
Following hearing on petitioner’s motion for a new trial, the Lower Court granted a new trial and same was set for May 12, 1971.
Despite the fact that prior to the trial date a pretrial conference was held to clarify the issues, the defendant’s counsel appeared in Court on May 12, 1971 and asked for a continuance of the trial on the ground that he had not understood that the trial would be held on that date. The trial was held, however, at which the defendant called no witnesses on direct examination. Following trial, the Lower Court took the matter under advisement. After several delays in the filing of brief on the part of the defendant, the Trial Court, on September 21, 1971, without a brief having been filed by defendant, rendered judgment denying the injunction. Following the denial of a motion by defendant for a new trial, a motion for a suspensive and devolutive appeal to this Court was ordered upon defendant posting a $500 bond. Petitioners filed a motion to increase the bond or to clarify the judgment rendered by the Trial Court so that the judicial sale could proceed. A hearing was held on the motion and the Trial Judge denied the relief sought by the petitioners. Thereafter, an application for writs was filed with this Court by the original plaintiffs herein and on December 20, 1971, this Court issued an alternative writ of Mandamus, Certiorari and Prohibition to the Lower Court commanding it to:
“modify and correct the Order of Suspen-sive Appeal as supplemented by your ruling on November 26, 1971, so that the Writ of Seizure and Sale may be forthwith executed and the judicial sale of the seized property may be held after due advertisement thereof. See Hibernia National Bank of New Orleans vs. Mary, 167 So.2d 200, writs refused in 167 So.2d 826.
Or, in the alternative, said Judge and the respondent, International Development, Inc., shall show cause in this Court, by briefs, on or before the 17th day of January, 1972, why this writ should not be made peremptory; and
Should said Judge elect the alternative, IT IS ORDERED that a writ of certio-rari issue therein, directing said Judge to transmit to the Court of Appeal, First Circuit, State of Louisiana, on or before the date aforesaid, the record, and a certified copy of the record, of the proceedings complained of by the relator herein, to the end that the validity of the proceedings may be ascertained;”
The alternative was selected by the Lower Court and we withheld making the writ peremptory due to the fact that just in a short space of time the entire matter would be up before us on the merits on February 29, 1972. On February 17, 1972, we issued however a stay order, “staying all further proceedings in this foreclosure case until the matter is finally disposed of.”
ON THE MERITS
The principle contention made on behalf of defendant is to the effect that there exists in the second mortgage a release clause entitling it to the release of 1 acre of land for each $200 paid on the principal amount of the notes provided that the release is requested in contiguous 500 acre tracts. This contention on the part of defendant is totally without merit because the executory proceeding was filed on the second mortgage and there is no certain release clause contained in the act of second mortgage. Furthermore, just a few days before the filing of the executory proceeding, the defendant signed a confession of judgment on this second mortgage and no mention of any release is made therein, no.r did the defendant at that time claim any right or entitlement to such a release.
*557 With regard to the alleged payments on the promissory notes made by the defendant, the record discloses that certain payments were made between the dates of February 17, 1964 and May 20, 1968. All of these payments again were made prior to the execution of the second promissory note on May 20, 1968, and thus can form no defense nor serve to be grounds for any injunction on this executory proceeding filed on the second mortgage. We wish to make it perfectly clear that we are determining here only such rights as Utah-Louisiana Investment Company, Henry Boh, Robert Boh, and C. Ellis Henican may have under the second mortgage. We specifically defer any ruling relative to the respective rights and obligations the parties may have under the first mortgage.
The defendant-appellant further argues that the Lower Court erred in granting a new trial from the default judgment and cites as authority De Francis v. Gauthier (1951) 55 So.2d 896 for the proposition to have a default judgment set aside, he must allege and prove that he had good reason for his non-appearance and for his failure to appear and timely plead, and cites also Cutrer v. Cutrer (1936) La.App., 169 So. 807.
We are of the opinion that this question is now answered in Article 1971 et seq. of the Louisiana Code of Civil Procedure. C.C.P. Art. 1972 states that a new trial shall be peremptorily granted “where the judgment appears clearly contrary to the law and the evidence”. C.C.P. Art. 1973 gives the Trial Judge full discretion to grant a new trial “in any case if there is good ground therefor. ...”
Under Article 1972 the Lower Court was compelled to grant a new trial to appellees in these proceedings because the judgment was obviously contrary to the evidence. All of the payments claimed by appellant were made prior to the creation of the mortgage foreclosed upon. In addition, a simple inspection of the mortgage foreclosed upon reveals that it does not contain a release clause. The judgment was clearly contrary to the evidence. See also, Pfeiffer v. Hemisphere Intern. Corp., 153 So.2d 467 (1963); Soileau v. Fusilier, 237 So.2d 92 (1970). Certainly the Lower Court did not abuse its discretion.
Now with reference to the alternative writ issued on December 20, 1971 and the stay order referred to above issued on February 17, 1972, the real question now involved in this case is, when a suspensive appeal is granted from a judgment denying an injunction, just what is suspended?
The plaintiffs or relators argue that the bond for the suspensive appeal is insufficient ; that it should be one and a half times the amount in dispute. It is true that security for a suspensive appeal from an order directing the issuance of a writ of seizure and sale must exceed the amount in dispute by one-half, C.C.P. Article 2642. The reason for this being that the execution of the writ of seizure and sale is suspended .pending the outcome of the appeal. However, we are not faced with this situation. This is an appeal from the denial of an injunction pursuant to C.C.P. Article 3612 of the Louisiana Code of Civil Procedure. This article was interpreted in the case of Hibernia National Bank of New Orleans v. Mary, La.App., 167 So.2d 200 (Writs refused in 246 La. 876, 167 So.2d 826). The facts in this case were somewhat complicated as in this present suit. Reduced to its simplest elements, the plaintiff there sought to enforce a mortgage for more than $90,000 by executory process, and the defendant unsuccessfully attempted to enjoin the seizure and sale. After a trial of the rule for a preliminary injunction the Trial Court refused to issue the injunctive order. However, it granted the defendant a suspen-sive appeal from this order, conditioned on his furnishing a $9,000 suspensive appeal bond, and further stayed all proceedings during the pendency of the appeal. Under supervisory writs, the Court of Appeal, Fourth Circuit, 262 So.2d 551, properly held that, under Article 3612 of the Louisiana Code of Civil Procedure, only the in-junctive proceedings could be stayed during the pendency of the suspensive appeal, and *558 modified the Trial Court’s order to revoke the stay of the executory proceedings. If there was no injunction issued there was nothing to suspend.
Therefore, it is submitted that the Trial Court erred in suspending the writ of seizure and sale and that the writ issued herein on December 20, 1971 is hereby made peremptory, and the stay order issued on February 17, 1972 be and it is hereby recalled and cancelled.
Accordingly, for the reasons hereinabove assigned, the judgment of the Lower Court denying the injunction will be affirmed and the alternative writ issued herein on December 20, 1971 be and it is hereby made peremptory, and the stay order issued on February 17, 1972 be and it is hereby recalled and cancelled, all at the cost of the defendant.
Judgment affirmed, writ made peremptory and stay order recalled.